UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ARTAGNAN LITTLE,

    Plaintiff,

v.

K. WILLIAMS, S. LADOUX, K. PARSONS, and CHAFFIN,

    Defendants.
_____/

Case No. 4:22-cv-12222
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF EXHAUSTION (ECF No. 39)
AND
TO DENY PLAINTIFF'S MOTION FOR
RESTRAINING ORDER AND SANCTIONS (ECF No. 54)**[1] [2]

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff D'artagnan Little (Little) is suing defendants K. Williams (Williams), S. Ladoux

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[2] Motions for injunctive relief are dispositive, meaning the undersigned must proceed by Report and Recommendation. *See Cook v. St. John Hosp. & Med. Ctr.*, No. 10-10016, 2010 WL 4137524, at *1 n.1 (E.D. Mich. Aug. 3, 2010), *report and recommendation adopted*, 2010 WL 4341192 (E.D. Mich. Oct. 27, 2010).

1

(Ladoux), K. Parsons (Parsons), and Chaffin, asserting claims concerning retaliation and misconduct charges, conspiracy, the refusal to provide him with grievance forms, and interference with his legal mail. *See* ECF Nos. 1, 14, 15. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 27).

Before the Court is a motion for summary judgment on the basis of exhaustion jointly filed by Chaffin, Ladoux, Parsons, and Williams. (ECF No. 39). The motion for summary judgment is fully briefed, (ECF Nos. 42, 43, 46, 49), and ready for consideration. Additionally, Little filed a motion for a restraining order and sanctions, (ECF No. 54), to which defendants filed a response, (ECF No. 57). The time for the filing of a reply has expired.

For the reasons set forth below, it is RECOMMENDED that defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. If this recommendation is adopted, Little's claims against Parsons would be dismissed without prejudice for failure to exhaust. Meanwhile, *all* of Little's claims against Williams, Ladoux, and Chaffin would survive and proceed to discovery. It is further RECOMMENDED that Little's motion be DENIED.

## II. Background

### A. Operative Complaint

Little has filed multiple papers titled as complaints. As explained below,

docket entry numbers 9 and 15 are supplemental to the original complaint at docket entry number 1.

The district court accepted the filings docketed as entries 14 and 15 as amended complaints, noting that they "are largely duplicative, but the second filing contains attachments which are not included with the first filing." (ECF No. 16). Given this determination, the undersigned will cite to docket entry number 15 throughout this Report and Recommendation. These filings contain new allegations but do not restate all of the allegations from the original complaint, meaning they are best understood as supplements to read alongside the original complaint. Additionally, the filing docketed as entry number 9 simply adds a jury demand and it will also be read as a supplement. Finally, the Court will not consider the filing docketed as entry number 19 because Little was unable to amend his complaint as a right at the time of its filing. Furthermore, the filing appears to be the same as entry number 15 except that it contains more attachments.

B.    Little's Allegations

Little alleges that on August 18, 2022, Williams and Ladoux conspired together to have Little taken from his cell to the "hole," so another inmate could steal Little's personal property. (ECF No. 1, PageID.6). Williams and Ladoux executed their plan while Little's cellmate was in the law library. (*Id.*, PageID.6-7,

3

12). Williams created this plan after Parsons, a grievance coordinator, informed Williams that Little was planning to file a grievance against Williams. (*Id.*, PageID.6, 26). Little was on modified access, meaning that he had to request forms from Parsons in order to file any grievances. (*Id.*, PageID.26). Parsons and Williams are friends and Parsons "made it clear to [Williams]" that Parsons would deny any request Little made for forms to file grievances against Williams. (*Id.*).

When Little was called out of his cell, Williams questioned him about the grievance that he planned to file against her. (*Id.*, PageID.7). She asked if he was planning to "rat on [her]." (*Id.*). Little responded by smiling and laughing at her. (*Id.*). Williams was angry that Little did not have a bigger response and began to call him names as he walked away from her. (*Id.*, PageID.7-8). After some more verbal back and forth, Williams informed Little that he was going to be sent to the hole. (*Id.*, PageID.8).

Little asked why he was going to be sent to the hole. (*Id.*). Williams responded, " 'Didn't you say you were going to kill me, or cut my throat or something?' " (*Id.*). Williams then looked at Salinas and Ladoux, and asked, " 'Didn't you hear that?' " (*Id.*, PageID.8-9, 13). Ladoux smiled and responded, " 'I think I heard him say that too.' " (*Id.*, PageID.9). Little said nothing and walked back to his cell. (*Id.*).

Williams contacted control center and reported that Little threatened to

4

"fuck [her] up like [his] victim." (*Id.*). She did so knowing that she would be believed and that Little would be sent to the hole, leaving his property unguarded in his cell. (*Id.*). When officers came to take Little to the hole, he asked them if he could secure his property in his locker first. (*Id.*). Sergeant Cerny agreed and reviewed Little's property with him. (*Id.*).

Once Little was removed from his cell, Williams and Ladoux unlocked his cell door, permitting another inmate to enter the cell and steal Little's property. (*Id.*, PageID.10, 12-13). When Sergeant Boregard came to the hole to review the property slip that he made after inventorying and packing up Little's cell, Little discovered the slip omitted approximately 90% of his property, including his color television. (*Id.*, PageID.9, 17). Little informed Boregard of this and Boregard left to review camera footage to determine what happened to Little's property. (*Id.*, PageID.17).

When Boregard returned to Little, he informed him that Ladoux let Little's cellmate into the cell even though the cell was supposed to remain locked until Little's property could be inventoried and packed up. (*Id.*, PageID.17-18). Ladoux then reopened the cell door and Little's cellmate exited the cell with two laundry bags, presumably full of Little's property. (*Id.*, PageID.18). Little's cellmate then gave the bags to another prisoner. (*Id.*). Little asked for Boregard's help in retrieving his property, but Boregard told him that Ladoux and Sergeant Price

5

instructed him to allow the other prisoner to keep the property and said that was what happened when you make threats. (*Id.*, PageID.18).

On August 19, 2022, Little sent a request to Parsons for forms so that he could file grievances against Williams and Ladoux for their actions the previous day. (*Id.*, PageID.28). Parsons ignored Little's request in an attempt to run out the seven-day clock for the filing of a timely grievance. (*Id.*, PageID.28-29). Parsons also used her power as a hearing investigator to secure a guilty finding on the misconduct report issued by Williams. (*Id.*, PagID.30-31).

On September 4, 2022, Little attempted to exhaust administrative remedies by appealing the result of his misconduct hearing. (ECF No. 15, PageID.23-24). That day, he handed the appropriate letters to initiate an appeal to Chaffin, who is responsible for incoming and outgoing legal mail. (*Id.*).

On October 13, 2022, Little received legal mail containing his appeal forms, which were date stamped to reflect that they were received on October 11, 2022. (*Id.*, PageID.24). Little only had thirty days to file an appeal; his appeal was thus rejected as untimely. (*Id.*). Little contends that the only way this could have happened was if Chaffin waited to send the forms so that the appeal would be considered untimely. (*Id.*).

The only grievance that Little filed relevant to the above allegations is SLF-22-10-0926-15C. Little filed the Step I grievance on October 17, 2022, and

6

detailed the above allegations regarding Chaffin's failure to mail his appeal in a timely manner. (ECF No. 39-3, PageID.227). Little's grievance was denied at all three steps of the process. (*Id.*, PageID.223-231).

C.     Screening Order

On March 7, 2023, the district court screened Little's complaint and dismissed a number of claims. (ECF No. 18).

The dismissed claims included ones against Warden J. Christiansen, Deputy Warden C. Lamentola, and Inspector B. Hull in their supervisory capacities; all claims based on the denial of Little's grievances or defendants' failure to properly investigate; his theft of personal property claim; violations of Michigan Department of Corrections (MDOC) policies and procedures and/or state law; his negligence claim; his equal protection claim; and his request that criminal charges be brought against defendants. (*Id.*, PageID.47-52). The district court also found that Little's conspiracy claim was insufficiently specific as to all defendants except Williams, Ladoux, Parsons, and Chaffin. (*Id.*, PageID.52-53). In addition, Little's claims were dismissed against Hearing Officer Fleming based on absolute immunity to monetary damages, and against all MDOC defendants in their official capacities for monetary relief based on sovereign immunity. (*Id.*, PageID.53-54).

The district court summarized the remaining claims as those "against Williams, LaDoux, Parsons, and Chaffin concerning retaliation and the misconduct

7

charges, conspiracy, the refusal to provide him with grievance forms, and interference with his legal mail[.]" (*Id.*, PageID.54-55). These claims will be considered below.

### III. Defendant's Motion

#### A. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco*

8

*Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Little is *pro se* when he responded to the motion does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

B.  Analysis

1.  Exhaustion Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their

9

responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

2. Application

Defendants' arguments regarding exhaustion largely miss the mark. They contend that after the district court screened the complaint, only the following claims remain:

1. On August 18, 2022, SLF Prison Counselor (PC) Kaylyn Williams issued Little a false misconduct;

2. Corrections Officer (CO) Steven Ladoux provided a false statement in support of the August 18, 2022, misconduct;

3. Grievance Coordinator (GC) Kathleen Parsons denied Little's request for a grievance form after he was found guilty of the August 18, 2022, misconduct ticket; and

4. RUM Chaffin did not process Little's mail containing the request for rehearing on the August 18, 2022, misconduct.

(ECF No. 39, PageID.189). This contention is incorrect.

The thrust of the original complaints is the *retaliation* and *conspiracy* claims

11

against Williams, Ladoux, and Parsons, which were screened and found not subject to summary dismissal. *See* ECF No. 18. That is, that Parsons informed Williams of Little's request to grieve Williams, leading Williams and Ladoux to conspire to call Little out while his cellmate was away, write him a false misconduct ticket, send him to the hole, and allow other inmates to steal his property. Williams' and Ladoux's actions were allegedly taken in retaliation for Little's planned grievance.

As defendants seem to acknowledge—at least in part—in their reply, (ECF No. 43, PageID.311), Little requested a grievance form from Parsons in order to file a grievance against Williams and Ladoux for conspiring to allow his property to be stolen. The documentary evidence submitted by Little shows that this request was made on August 21, 2022, and denied on September 1, 2022. (ECF No. 42, PageID.297-298). On September 27, 2022, Parsons rejected Little's continued requests to file grievances against Williams and Ladoux. (*Id.*, PageID.301).

Given that Little was on modified access at the time of the alleged incidents, his ability to file grievances ran solely through Parsons. *See Houston v. Sices*, No. 1:21-cv-947, 2022 WL 17070122, at *2 (W.D. Mich. Oct. 3, 2022) ("While on modified access, a prisoner may obtain Step I forms only through the Step I Grievance Coordinator."), *report and recommendation adopted*, 2022 WL 17042453 (W.D. Mich. Nov. 17, 2022). Her documented repeated refusal to give Little grievance forms so that he could file grievances against Williams and

12

Ladoux for their alleged actions rendered the grievance process unavailable to him. *See Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("If a prisoner is improperly denied access to the grievance process, the process is rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action."); *see also Ross v. Blake*, 578 U.S. 632, 644 (2016) (explaining that a grievance process is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Therefore, because the grievance process was unavailable to Little, despite his attempts to comply with the requirements of his modified-access status, his conspiracy and retaliation claims against Williams and Ladoux related to his stolen property should survive defendants' exhaustion motion.

Next, defendants argue that the retaliatory misconduct ticket claim is unexhausted because Little filed his original complaint on September 9, 2022, in the Western District of Michigan. This means that Little's complaint was filed before he would have received a response on his appeal of the misconduct ticket. Defendants argue that Little cannot remedy this by filing an amended complaint because his original complaint contained no exhausted claims. However, as explained above, defendants are incorrect that Little failed to exhaust his administrative remedies as to his claims for conspiracy and retaliation against

13

Williams and Ladoux. Accordingly, Little can remedy this deficiency, as he has done. *See* ECF No. 15.

Moreover, in his subsequently filed complaints, Little alleges that his appeal was only rejected as untimely because Chaffin purposefully did not mail it in a timely manner. This allegation is supported by Little's explanation that the rejected appeal was date stamped as received on October 11, 2022, despite Little's contention that he handed the appeal forms to Chaffin on September 4, 2022. Accordingly, there is a genuine issue of material fact as to whether Chaffin rendered the grievance process unavailable to Little, particularly because defendants do not attempt to rebut Little and explain that the grievance process was in fact available to him.

Finally, defendants argue that Little cannot add an exhausted claim against Chaffin in an amended/supplemental complaint because his original complaint contained no exhausted claims. Once again, this argument is incorrect given that the original complaint contained exhausted claims against Williams and Ladoux. Therefore, Little's claim against Chaffin may properly be considered going forward.

The only defendant against whom Little failed to exhaust his administrative remedies is Parsons. Little never filed a grievance naming Parsons. He also never requested grievance forms from Parsons so that he could file a grievance against

her. While Little may have considered it fruitless to attempt to request grievance forms from Parsons to file a grievance against her, under the law he was required to at least try. This is because "[a] prisoner's subjective belief that the grievance process would be ineffective cannot excuse failure to exhaust the prison grievance procedure prior to filing suit." *Stevens v. Potila*, No. 14-CV-10863, 2015 WL 1245889, at *3 (E.D. Mich. Mar. 18, 2015). Accordingly, Little's claims against Parsons should be dismissed without prejudice.

Meanwhile, *none* of Little's remaining claims against Williams, Ladoux, and Chaffin should be dismissed for failure to exhaust. In other words, Little's retaliation and conspiracy claims against Williams and Ladoux and his interference with legal mail claim against Chaffin should survive and be subject to discovery.

IV. Little's Motion

A. Background

In his motion, Little requests a restraining order against unknown staff at Bellamy Creek Correctional Facility (IBC) as well as sanctions against Parsons and Warden J. Christiansen of St. Louis Correctional Facility (SLF). Little says that he was recently transferred from SLF to IBC, and that upon his arrival at IBC, he was "brutally assaulted by inmates in retaliation for his civil claim against Warden Christiansen and K. Parsons." (ECF No. 54, PageID.371). After the assault, Little was taken to healthcare where an unknown officer photographed his injuries and

15

remarked that Christiansen and Parsons were going to love the pictures. (*Id.*, PageID.372).

B.  Analysis

Little's motion is essentially one for injunctive relief. In order to obtain such relief, the movant must meet each of the following factors: (1) the movant has a strong likelihood of success on the merits; (2) the movant would suffer irreparable injury absent an injunction; (3) granting the injunction would not cause substantial harm to others; and (4) the public interest would be served by granting the preliminary injunction. *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Moreover, "[i]njunctive relief is an extraordinary remedy and is issued cautiously and sparingly." *Enerco Grp., Inc. v. Deutsch*, No. 1:16CV213, 2016 WL 852572, at *2 (N.D. Ohio Mar. 3, 2016).

However, the Court need not even consider the above four factors under the present circumstances. This is because Little's motion rests on factual allegations that are not present in the underlying complaints. Little is requesting injunctive relief for an alleged assault that occurred long after the allegations in the complaints, and he primarily seeks to affect the behavior of individuals who are not named defendants in this matter. *See Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) ("[A] party moving for a preliminary injunction must necessarily

16

establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  As such, Little "cannot seek an injunction because there is no claim upon which to base injunctive relief." *Smith v. Thompson*, 638 F. Supp. 2d 754, 756 (E.D. Ky. 2009).  "Put simply, the Court cannot grant relief, such as an injunction, until a [pleading] is filed which asserts a substantive claim that supports the relief he seeks." *Id.* at 756-57.  Thus, Little's motion should be denied.

## V. Conclusion

For the reasons stated above, it is RECOMMENDED that defendants' motion for summary judgment, (ECF No. 39), be GRANTED IN PART and DENIED IN PART.  If this recommendation is adopted, Little's claims against Parsons would be dismissed without prejudice.  Meanwhile, *all* of Little's claims against Williams, Ladoux, and Chaffin would survive summary judgment on the basis of failure to exhaust.  That is, Little's retaliation and conspiracy claims against Williams and Ladoux and his interference with legal mail claim against Chaffin should survive and be subject to discovery.

It is further RECOMMENDED that Little's motion for injunctive relief, (ECF No. 54), be DENIED.

Dated: May 3, 2024　　　　　　　　　　　s/Kimberly G. Altman  
Detroit, Michigan　　　　　　　　　　　KIMBERLY G. ALTMAN  
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 3, 2024.

s/Carolyn M. Ciesla<br>
CAROLYN M. CIESLA<br>
Case Manager