UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DARTAGNAN LITTLE, | Case No. 22-12222 |
| Plaintiff, | F. Kay Behm |
| v. | United States District Judge |
| K. WILLIAMS, *et al.*, | Kimberly G. Altman |
| Defendants. | United States Magistrate Judge |
| _____ / | |

**OPINION AND ORDER ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S JULY 1, 2025 REPORT AND RECOMMENDATION (ECF No. 94)**

**I.   PROCEDURAL HISTORY**

Currently before the court is Magistrate Judge Kimberly G. Altman's July 1, 2025 Report and Recommendation (R&R). (ECF No. 94). Magistrate Judge Altman recommends granting Defendant Parson's motion for summary judgment based on exhaustion and granting Defendants Chaffin, Ladoux, and Williams' motion for summary judgment on the merits. (ECF No. 72). Little filed objections to the R&R (ECF No. 98) and Defendants filed a response (ECF No. 103).

For the reasons set forth below, the Court **ACCEPTS** and **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 94), **GRANTS** Parson's motion for summary judgment based on failure to exhaust administrative

1

remedies (ECF No. 39), and **GRANTS** Chaffin, Ladoux, and Williams' motion for summary judgment on the merits (ECF No. 72). Plaintiff's complaint is **DISMISSED** without prejudice as to Parsons and with prejudice as to Chaffin, Ladoux, and Williams.

II.   **LEGAL STANDARD**

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that dispute the general correctness of the report and recommendation are improper. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id*. (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v.*

2

*Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346. And, when objections are "merely perfunctory responses . . . rehashing . . . the same arguments set forth in the original petition, reviewing courts should review [a Report and Recommendation] for clear error." *Ramirez v. United States*, 898 F.Supp.2d 659, 663 (S.D.N.Y. 2012); *see also Funderburg v. Comm'r of Soc. Sec.*, No. 15-10068, 2016 WL 1104466, at *1 (E.D. Mich. Mar. 22, 2016) (Hood, J.) (noting that the plaintiff's objections merely restated his summary judgment arguments, "an approach that is not appropriate or sufficient").

### III.  FACTUAL BACKGROUND

The Magistrate Judge ably summarized the factual background of Little's claims from the Complaint:

> Little alleges that on August 18, 2022, Williams and Ladoux conspired together to have Little taken from his cell to the "hole," so another inmate could steal Little's personal property. (ECF No. 1, PageID.6). Williams and Ladoux executed their plan while Little's cellmate was in the law library. (*Id.*, PageID.6-7, 12). Williams created this plan after Parsons, a grievance coordinator, informed Williams that Little was planning to file a grievance against Williams. (*Id.*, PageID.6, 26).

3

Little was on modified access, meaning that he had to request forms from Parsons in order to file any grievances. (*Id.*, PageID.26). Parsons and Williams are friends and Parsons "made it clear to [Williams]" that Parsons would deny any request Little made for forms to file grievances against Williams. (*Id.*).

When Little was called out of his cell, Williams questioned him about the grievance that he planned to file against her. (*Id.*, PageID.7). She asked if he was planning to "rat on [her]." (*Id.*). Little responded by smiling and laughing at her. (*Id.*). Williams was angry that Little did not have a bigger response and began to call him names as he walked away from her. (*Id.*, PageID.7-8). After some more verbal back and forth, Williams informed Little that he was going to be sent to the hole. (*Id.*, PageID.8).

Little asked why he was going to be sent to the hole. (*Id.*). Williams responded, " 'Didn't you say you were going to kill me, or cut my throat or something?' " (*Id.*). Williams then looked at Salinas and Ladoux, and asked, " 'Didn't you hear that?' " (*Id.*, PageID.8-9, 13). Ladoux smiled and responded, " 'I think I heard him say that too.' " (*Id.*, PageID.9). Little said nothing and walked back to his cell. (*Id.*).

Williams contacted control center and reported that Little threatened to "fuck [her] up like [his] victim." (*Id.*). She did so knowing that she would be believed and that Little would be sent to the hole, leaving his property unguarded in his cell. (*Id.*). When officers came to take Little to the hole, he asked them if he could secure his property in his locker first. (*Id.*). Sergeant Cerny agreed and reviewed Little's property with him. (*Id.*).

4

Once Little was removed from his cell, Williams and Ladoux unlocked his cell door, permitting another inmate to enter the cell and steal Little's property. (*Id*., PageID.10, 12-13). When Sergeant Boregard came to the hole to review the property slip that he made after inventorying and packing up Little's cell, Little discovered the slip omitted approximately 90% of his property, including his color television. (*Id*., PageID.9, 17). Little informed Boregard of this and Boregard left to review camera footage to determine what happened to Little's property. (*Id*., PageID.17).

When Boregard returned to Little, he informed him that Ladoux let Little's cellmate into the cell even though the cell was supposed to remain locked until Little's property could be inventoried and packed up. (*Id*., PageID.17-18). Ladoux then reopened the cell door and Little's cellmate exited the cell with two laundry bags, presumably full of Little's property. (*Id*., PageID.18). Little's cellmate then gave the bags to another prisoner. (*Id*.). Little asked for Boregard's help in retrieving his property, but Boregard told him that Ladoux and Sergeant Price instructed him to allow the other prisoner to keep the property and said that was what happened when you make threats. (*Id*., PageID.18).

On August 19, 2022, Little sent a request to Parsons for forms so that he could file grievances against Williams and Ladoux for their actions the previous day. (*Id*., PageID.28). Parsons ignored Little's request in an attempt to run out the seven-day clock for the filing of a timely grievance. (*Id*., PageID.28-29). Parsons also used her power as a hearing investigator to secure a guilty finding on the misconduct report issued by Williams. (*Id*., PagID.30-31).

5

> On September 4, 2022, Little attempted to exhaust administrative remedies by appealing the result of his misconduct hearing. (ECF No. 15, PageID.23-24). That day, he handed the appropriate letters to initiate an appeal to Chaffin, who is responsible for incoming and outgoing legal mail. (*Id*.).
>
> On October 13, 2022, Little received legal mail containing his appeal forms, which were date stamped to reflect that they were received on October 11, 2022. (*Id*., PageID.24). Little only had thirty days to file an appeal; his appeal was thus rejected as untimely. (*Id*.). Little contends that the only way this could have happened was if Chaffin waited to send the forms so that the appeal would be considered untimely. (*Id*.).

(ECF No. 94, PageID.663-65)

**IV.    ANALYSIS**

    A.    <u>Objection as to Parsons</u>

In an earlier Report and Recommendation, Judge Altman recommended that Parsons be dismissed for failure to exhaust because Little never filed a grievance naming Parsons and because the record showed that Little never requested a grievance form from Parsons to grieve her, as he was required to do because he was on modified access.  (ECF No. 94, PageID.670).  Little subsequently provided evidence that he did request a grievance from Parsons on August 31, 2022 in order to file a grievance against her.  The request refers to an earlier request, but that original request was not provided by Little.  *Id*.  Thus, the

6

only request for a form to grieve Parsons in the record is the one dated August 31, 2022.

Little objects that the Magistrate Judge did not in fact consider the new evidence as she stated she was doing because she concluded that Parsons should remain dismissed from the case for failure to exhaust. He claims that neither Defendants nor the Magistrate Judge can dispute the fact that he did ask Parsons for a grievance form to file against her. Little argues that the Magistrate Judge's conclusion is inconsistent with the evidence. In the court's view, the Magistrate Judge did consider August 31, 2022 grievance request form and concluded it was untimely requested. The Magistrate Judge first observed that Little was on modified access, which meant he had to submit a request to the grievance coordinator (Parsons) for a grievance form. The Magistrate Judge found the request for the grievance form to be untimely under the grievance procedure:

> In his complaint, Little alleges that the robbery occurred on August 18, 2022. In his purported grievance request, he says that he "asked for [a grievance] to file on [Parsons] for assisting Williams to cover up the robbery and notifying [Williams] that [he] was attempting to grieve her." (ECF No. 76, PageID.589). It is unclear when Little alleges this conduct took place, but defendants assert that the relevant date is the same date as the robbery, and Little does not assert otherwise in his response. If the conduct occurred on August 18, 2022, defendants are correct that Little's request for a

7

> grievance was due by August 29, 2022. See MDOC Policy Directive 03.02.130 ¶ Q ("Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue… If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff."). As his request is dated August 31, 2022, it was untimely filed and does not exhaust any of his claims against Parsons. Little has not presented any evidence or arguments to the contrary, nor has he provided any explanation for the late request or any evidence of an earlier request. As such, even considering the new evidence, Parsons should remain dismissed from the case for failure to exhaust.

(ECF No. 94, PageID.672-73). Thus, the Magistrate Judge gave due consideration to the August 31, 2022 request.

As to the Magistrate Judge's conclusion that the request for a grievance form was untimely, Little objects that the Magistrate Judge's conclusion is error because it "mirrors" Defendant's argument. Little maintains that he clearly exhausted his administrative remedies by requesting the grievance form from Parsons. Little admits that he requested the grievance form on August 31, 2022. (ECF No. 98, PageID.707; Exhibit C-8, ECF 98, PageID.740). Little also argues, however, that his request was made in a timely manner and that he requested a grievance form from Parsons four times, pointing to Exhibit C-5B. This exhibit is a

8

September 1, 2022 memorandum from Parsons to Little regarding four requests for grievance forms. (ECF No. 98, PageID.741). Based on the responses to each request, none of the requests appear to involve any additional request for a grievance form to file a grievance against Parsons, other than the one dated August 31, 2022. Indeed, Little maintains that Exhibit C-8 is the request for a grievance form to file against Parsons. Little's argument that Parsons blocked numerous attempts to obtain a grievance form from her is not supported by the record as he has only produced the August 31, 2022 request. Accordingly, the court agrees with the Magistrate Judge's analysis and conclusion that the August 31, 2022 request for a grievance form was untimely under the applicable grievance procedure and Little's objections are **OVERRULED**.

    B.    <u>Objection as to Defendants Chaffin, Ladoux, and Williams</u>

Little objects that the Magistrate Judge did not consider his arguments or evidence. However, Little offered no substantive response to the motion. Instead, the scope of Little's briefs regarding Defendants' motion for summary judgment was very limited. In his response to Defendants' motion for summary judgment, Little argued that Defendants were not entitled to file a second motion for summary judgment and that the court previously denied summary judgment to these Defendants. First, Little contended that Defendants' remedy is limited to

9

an appeal of this court's decision. Second, in his sur-reply, Little explained that he "declined to respond to defendants' motion" because he already addressed Defendants' claim that his claim has no merit in his initial complaint. (ECF No. 89-1, PageID.645). Notably, "the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations." *Gover v. Speedway Super Am., LLC*, 284 F. Supp. 2d 858, 861–62 (S.D. Ohio 2003).

As to his first argument, Little appears to be mixing up two different decisions. The court adopted the Magistrate Judge's prior recommendation denying these Defendants summary judgment on the issue of exhaustion. (ECF Nos. 59 and 75). Additionally, the court issued a screening opinion, in which it determined that the claims against these Defendants were not subject to summary dismissal under 28 U.S.C §§ 1915(e)(2)(b) and 1915A. (ECF No. 18, PageID.55-56). The standard for screening – whether a claim is frivolous or fails to state a claim on which relief may be granted – is entirely different from the standard imposed when the court is deciding a motion for summary judgment, where the parties must marshal their relevant evidence and the court determines whether there are genuine issues of material fact. And at no time has the court previously decided a motion for summary judgment as to the merits of the claims against Chaffin, Ladoux, and Williams. Accordingly, the filing of the motion for

10

summary judgment on the merits was entirely proper under the scheduling order issued by the Magistrate Judge. To the extent that Little raises this same issue in his objections, it is **OVERRULED**.

Little argues that that Magistrate Judge incorrectly states that he did not produce any factual evidence that Parsons, through her boss Chaffin, notified Williams that she was being grieved by Little for not correcting his classification. (ECF No. 98, PageID.718). Little points to Exhibit D-17 as proof that Parsons discussed his grievance with Chaffin and Williams. The memorandum to which Little refers does not make that statement. (ECF No. 72-3, PageID.542). Little complained that Williams was not assisting Little with various requests and that Little had complained to the Resident Unit Manager (RUM) about the issues. *Id*. Parsons contacted the RUM who informed her that he had already spoken to Williams "that same day" over the issues and that he needed to patient. *Id*. The "same day" was the day that Little complained to the RUM about Parsons. The court does not find, contrary to Little's arguments, that the memorandum shows that Parsons told Williams that Little was trying to grieve her. Accordingly, this objection is **OVERRULED**.

Little next objects to the Magistrate Judge's conclusion that because a hearings officer found him guilty of the major misconduct, those factual findings

11

are conclusive.  Little argues that where such findings are overturned on appeal, they cannot be treated as conclusive facts.  Here, however, Little's misconduct ticket was not overturned on appeal.  He claims, however, that Chaffin blocked his efforts to appeal.  He objects to the Magistrate Judge's conclusion that he failed to submit any proof that Chaffin interfered with the delivery of his appeal to the Hearings Division.  Little points to Exhibit Z-9 and Z-10, which is a Step II grievance appeal that he filed against Chaffin along with the response.  Little did not however, attach this evidence or even refer to it in his response to the motion for summary judgment or his sur-reply.  (ECF Nos. 85, 89).  As a general rule, district courts do not have to consider arguments on review that were not raised before the magistrate judge.[1]  *See Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000) ("The magistrate [ ] never had the opportunity to consider this issue. Courts have held that while the Magistrate Judge Act, permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does

---

[1] Little claims that he refuted various of Defendants' arguments in a variety of other pleadings besides his response and sur-reply.  He points to his response to the first motion for summary judgment on exhaustion as well as his motion to amend the complaint to add Chaffin.  However, it is the job of the Magistrate Judge or this court to scour the record in search of arguments and evidence to support arguments that Little did not make in his response and sur-reply.  *See Emerson v. Novartis Pharm Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("'Judges are not like pigs, hunting for truffles' that might be buried in the record.")).  The references to other pleadings will be considered no further.

not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. Hence, Petitioner's failure to raise this claim before the magistrate constitutes waiver."). Consequently, the court declines to address Little's new evidence that the Magistrate Judge did not have the opportunity to consider and **OVERRULES** this objection.

Little also objects to the Magistrate Judge's application of the intra-corporate conspiracy doctrine to bar his conspiracy claim. The Magistrate Judge analyzed the issue as follows:

> [U]nder the intracorporate conspiracy doctrine, "if all of the defendants are member of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). The doctrine "applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." Id. at 818. For the purposes of this doctrine, the MDOC is one entity. *See Hubbard v. Beck*, No. 2:22-CV-223, 2022 WL 17687998, at *8 (W.D. Mich. Dec. 15, 2022) (internal citation omitted) (finding that the plaintiff's conspiracy claim against MDOC defendants under § 1983 was barred by the intracorporate conspiracy doctrine); *Tietz v. Corizon Health, Inc.*, No. 20-10814, 2021 WL 2662245, at *16 (E.D. Mich. June 29, 2021) (same). As both Williams and Ladoux are employees of the MDOC, they could not have formed a conspiracy while acting within the scope of their employment. *See Hubbard*, 2022 WL 17687998, at *8 ("Plaintiff alleges no

13

> facts suggesting that Defendants were acting outside the course of their duties, however improperly he believes they may have been exercising those duties. He instead alleges that Defendants…used the authority granted to them through their employment to cause Plaintiff harm."). As such, summary judgment should be granted on Little's conspiracy claim.

(ECF No. 94, PageID.681-82). The court finds that the Magistrate Judge properly applied the intracorporate conspiracy doctrine to bar Little's conspiracy claim. Accordingly, the objection is **OVERRULED**.

The remainder of Little's purported objections are essentially a newly drafted substantive response to the motion for summary judgment, instead of clearly identified objections to the Magistrate Judge's recommended disposition. The limited scope of Little's response to Defendants' motion for summary judgment, as described above, is significant because he raises a host of new arguments and facts in his objections that were not presented to the Magistrate Judge. "The general rule is that district judges will not entertain issues and arguments that appear for the first time in objections to a magistrate judge's report and recommendation." *Moore v. United States*, 2016 WL 4708947, at *2 (E.D. Ky. Sept. 8, 2016) (citing *Moore v. Prevo*, 379 F. App'x 425, 428 n.6 (6th Cir. 2010); *The Glidden Co. v. Kinsella*, 386 F. App'x 535, 544 & n.2 (6th Cir. 2010) (declining to review an issue that the district judge did not consider because it

14

was not presented to the magistrate judge); *Johnson v. Stewart*, 2010 WL 8738105, at *1 (6th Cir. May 5, 2010) (concluding that a plaintiff waived a claim by failing to raise it before the magistrate judge); *Muhammad v. Close*, 2009 WL 8755520, at *2 (6th Cir. Apr. 20, 2009) (explaining that new legal claims not presented to the magistrate judge may not be presented to the district court)); *see also Jones–Bey v. Caruso,* 2009 WL 3644801, *1 (W.D. Mich. Oct. 30, 2009) ("The Magistrates Act was not intended 'to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'") (citation omitted).

As set forth above, Little's response to the motion for summary judgment was limited to his argument that Defendants were not entitled to file a second motion for summary judgment and that the court previously denied summary judgment to these Defendants. Indeed, Little contended that Defendants' remedy is limited to an appeal of this court's decision. Further, in his sur-reply, Little explained that he "declined to respond to defendants' motion" because he already addressed Defendants' claim that his claim has no merit in his initial complaint. (ECF No. 89-1, PageID.645). Little's purported objections are all arguments that he could have and should have made in response to Defendants' motion for summary judgment so that the Magistrate Judge could duly consider

15

them. He declined to offer any substantive response and Little cannot now run a different version of events past this court than he did before the Magistrate Judge. For these reasons, the court finds no basis to disturb the conclusions of the Magistrate Judge and Little's remaining objections are **OVERRULED**.

**V.    CONCLUSION**

For the reasons set forth above, the Court **ACCEPTS** and **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 94), **GRANTS** Parson's motion for summary judgment based on failure to exhaust administrative remedies (ECF No. 39), and **GRANTS** Chaffin, Ladoux, and Williams' motion for summary judgment on the merits (ECF No. 72). Plaintiff's complaint is **DISMISSED** without prejudice as to Parsons and with prejudice as to Chaffin, Ladoux, and Williams. This is a final order and closes the case.

**SO ORDERED**.

Date: September 4, 2025            s/F. Kay Behm
                                   F. Kay Behm
                                   United States District Judge